## AFFIDAVIT

I, Matthew P. Galas, hereby depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for eight months. Prior to the FBI I was employed as an actuarial analyst for a human resource consulting firm. I am currently assigned to the Economic Crimes Unit of the Boston Division of the FBI.

2. I am aware that Title 18 of the United States Code, Section 1344, makes it a crime for anyone to knowingly execute or attempt to execute a scheme or artifice to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

3. I make this affidavit in support of a criminal complaint against STEVE MARCELIN ("MARCELIN"). For the reasons detailed below, there is probable cause to believe that MARCELIN committed Bank Fraud on July 16, 2005, and August 19, 2005.

4. The facts stated herein are based upon my own personal involvement in this investigation, my discussions with other law enforcement officers also involved in the investigation, as well as interviews with bank personnel and witnesses to the matter contained herein. In submitting this affidavit, however, I have not included each and every fact known to me about the investigation, but only those facts that I believe are sufficient to establish the requisite probable cause.

**OVERVIEW OF THE SCHEME:**

5. Based on the investigation to date, I believe that MARCELIN is involved, along with several other individuals, in a scheme to produce and cash counterfeit checks

1

at federally insured financial institutions using the true account information of legitimate third party corporate entities. MARCELIN's role in the scheme involves recruiting individuals, known as runners, to cash counterfeit checks, and recruiting other individuals to drive MARCELIN (who does not have a driver's license) and the runners to each of the target banks. MARCELIN also interfaces with the counterfeiter or someone working with the counterfeiter to obtain the counterfeit checks, and to provide the cash to the counterfeiter.

6. As a result of this scheme, MARCELIN and people working with him have cashed counterfeit checks worth over $100,000.

**SPECIFIC ACTIVITY CHARGED IN THE CRIMINAL COMPLAINT:**

First Undercover Operation:

7. On July 16, 2005, Special Agents of the Boston Division of the FBI conducted an undercover operation in which a Cooperating Witness (CW) acted as the driver for MARCELIN and an Undercover Employee (UCE) acted as the check casher for MARCELIN.

8. MARCELIN instructed the CW to drive to the Westgate Mall, where MARCELIN said he needed to meet someone to pick up the counterfeit checks. Shortly thereafter, the CW drove to three Sovereign Bank branches, in Brockton, Canton and Randolph in the District of Massachusetts, and MARCELIN told the UCE to cash counterfeit checks at each branch.

9. On each occasion, MARCELIN passed the counterfeit check to the UCE just prior to the UCE entering the bank branch. The UCE then passed the funds he/she received from cashing the counterfeit checks directly to MARCELIN.

10. The counterfeit checks were drawn on the Sovereign Bank account of a company with the initials N.B.L.P. In total, the UCE, at the direction of MARCELIN, cashed over $2,500 of checks on that day.

11. The deposits of Sovereign Bank are insured by the Federal Deposit Insurance Corporation.

12. MARCELIN paid the UCE $200 for cashing the counterfeit checks.

Second Undercover Operation:

13. On August 19, 2005, Special Agents of the Boston Division of the FBI conducted a second undercover operation in which a the CW again acted as the driver for MARCELIN and the UCE again served as MARCELIN's check casher.

14. On that day, the CW, with MARCELIN and the UCE in the car, drove to six different branches of Bank of America in Quincy, Braintree, and Weymouth in the District of Massachusetts. Outside each bank, MARCELIN gave a counterfeit check to the UCE, and instructed him/her to cash the check. On each occasion, the UCE passed the funds he/she received from cashing the counterfeit checks directly to MARCELIN.

15. The counterfeit checks were drawn on the Bank of America account of a company with the initials S.I. In total, the UCE, at the direction of MARCELIN, cashed five checks for over $7,000 on that day.

16. The deposits of Bank of America are insured by the Federal Deposit Insurance Corporation.

17. After the UCE left the sixth Bank of America branch, the FBI and Bank of America security decided to end the operation by having the UCE tell MARCELIN that he/she was unsuccessful in trying to cash this check. MARCELIN told the UCE that he

had several additional checks that they could have cashed if the Bank had continued to honor the checks.

18. MARCELIN paid the UCE $500 for cashing the counterfeit checks.

19. On September 8, 2005, MARCELIN admitted to me that he was involved in the above-described check cashing scheme.

**CONCLUSION:**

20. Based on the information set forth above, there is probable cause to believe that MARCELIN has committed Bank Fraud in violation of federal law, namely Title 18, United States Code, Section 1344.

MATTHEW P. GALAS
Special Agent, F.B.I.

Subscribed and sworn to before me this 15th day of September 2005.

JUDITH G. DEIN
United States Magistrate Judge

4